Mr. Toronto. Thank you. Next case is N. Ray Burrows. This is my, uh, this is, do you remember me? Oh, yes. I think this is his first arrest. Mr. Sicosio. Good morning, Your Honor. My name is Richard Sicosio. On behalf of Mr. Roger Burrows, there's only one issue in this case. Is Mr. Burrows' invention obvious under 103? That's the only issue. But the law is extremely clear. There are certain factors that must be established by the PTO in rejecting it. Why isn't it obvious that you can retain information by taking a picture of the thing you want to be informed of? Well, see, that goes to actually understanding the invention. Help me understand the thing. It's not a question of taking a picture of a document. That's like a scanner. Scanners are not involved. Scanner is not the prior arsonist case. What happens is the data has to be created. It does not exist as such. There's a stream of data throughout this whole system that eventually gets to the printer. But as an individual item of a document, the coupon does not exist. But I'm still struggling to understand why in this day and age it wouldn't be obvious of one of the skill and the art to store data in many different ways, in many different forms, to take a picture of the whole thing, to divide it up into categories. Computers do this automatically for one of the skill and the art, don't they? Yes, Your Honor. So what am I missing here? The issue is, if you look at Claim 1, it's the coupon data has to be created simultaneously with the printing of the airline ticket. You've got to take the coupon data out of there. That's what ARC wants. They want to get rid of this coupon. So you've got to take the data out of there, and that's the creative, the inventive step. The other aspect of just storing it and manipulating it with a computer, yes, that's no problem. Tell me precisely what's creative here, what one of skill and the art wouldn't know to do. The reservation system, you go in and the person gets a ticket. It puts all the information into it. It goes into the reservation system, which is a special computerized system. And then it prints. But it's a stream of data that is created. The coupon data is not a separate entity within that stream of data. It doesn't exist. You can't just get that data out of there.  is when it's printed. But then it's too late. Then you have to scan it. And that's not what the invention is. So the invention was to conceive, well, I've got to get the data out of there. I've got to get this coupon data out of there. Because it doesn't exist. So you've got to create it. And the way you create it, as Mr. Burrow said, was once he realized how to conceive it, he sent it out to a bunch of different programs. And one of the different programs had a special task, to be able to create this data from the stream of data. That's the invention. In other words, how do you get this data from the system? You have a computer system. How do you get the data? It's all mixed up. It's all in there. So how do you get it out? But I'm still not understanding why one of skill and the art wouldn't know a variety of ways to process information using a computer. Because there has been no showing by the patent office, and there is no showing, how to create this data from a stream of data. That has never been shown by the patent office. There is no prior art to show that. No, but they only have to show that one of skill and the art would know how to do it. They don't have to do it themselves. They only have to show that one of skill and the art would know how to do it. Why doesn't one of skill and the art know this? There is nothing in the decision. Who is the skilled artisan in this case, by the way? Mr. Burroughs, or the programmers, or... By definition, it's not Mr. Burroughs. He is the inventor. Who else is it? It's a computer programmer, right? Well, wouldn't it be a computer operator programmer? No, AHRQ is the one that's imposing the requirements. AHRQ is the one that approves it. AHRQ is the one that says, Mr. Burroughs, the smoking gun letter, said it is a facsimile, completely different from the way AHRQ said it was to be done. And they approved it. It's the smoking gun letter. I can't emphasize enough, Your Honor, that the invention is in how to get this data out of the reservation system. There's no art that says how to do it. There's no art that says how to get something out of a complete stream of data, you know, on your computer, and then get rid of it from there. There's no art. Where is the art? They've got to show art. They've got to show prior art. That's the brain case. This Court has followed it. If the law has not followed it, why have it? On the other hand, the declaration of Mr. Burroughs is extremely important. I think that ought to be read. And that's on page 333 through 337. The fact that AHRQ actually approved Mr. Burroughs' invention, and incidentally, even AHRQ says that he was the only one who ever applied and was approved. If it was so obvious, why didn't other people do it? It hasn't been done before. It's been seven years now, five years. And still nobody has done it. Still nobody has created that data. And that's the inventive stuff. I mean, you have to look at it and say, well, yeah, it's obvious because it's computer information and people can do anything with a computer. Not so. You have to look at it from the person's standpoint. Why didn't AHRQ come up with this invention and say this is what I'm supposed to do? Let's generate it this way. I mean, there was absolutely no information regarding that. There's no suggestion regarding that. In fact, what Mr. Burroughs did was the complete opposite of what AHRQ was saying. He said, the heck with the scanner business because the only way you could copy a coupon optically the only way you could do it is print the coupon and then scan it. That's not what Mr. Burroughs did. There is no other way to do that. Your Honor, this is not a precedent-setting case. But Graham ought to be followed. I mean, in the interest of justice, Mr. Burroughs ought to be able to have PTO follow Graham. Issue some sort of reasonable prior art, appropriate prior art. No prior art was cited. I mean, the scanner is not prior art to the idea of actually extracting it. For that reason alone, they can follow the law. Thank you, Your Honor. Thank you, Mr. Sicosio. Mr. Kelly. Good morning, Your Honor. May it please the Court. The issue in this case comes down to claim of obstruction and the meaning of the claim term agent coupon data. Contrary to the arguments just made, agent coupon data, as described by the specification, is not some sort of extractable, searchable data that can be communicated or manipulated by a computer. The specification here, the single best source for claim construction, defines agent coupon data, and it defines it broadly as the information contained on an agent coupon. There's no dispute in this case about the prior art. In the prior art system, a travel agent generated a ticket on a computer, printed out the ticket on a printer, and at the same time printed an agent coupon. The agent coupon contained all the information one would expect to find on the ticket, and then they saved that agent coupon in hard copy form for two years because they had to. In 2001, ARC, I'm sorry, in 2000, ARC relieved agents of the requirement that they save the hard copy and instead said to them, you can save the agent coupons on a computer storage device like a CD-ROM. The following year, Mr. Burroughs filed his application and claimed pretty much what ARC had told agents they could do. Now, in his arguments today, Mr. Seccosio continues to say that you've got to get the data off the coupon and that the data is somehow independent of the coupon and that the invention focuses on this disassociation of the data from the agent coupon. There's nothing in the specification to support that argument. Nothing. The specification at page one explains what agent coupon data is. It's the information on the coupon. And as the board held, if you save an image of that coupon, you're going to save the data. That's why ARC wanted it saved, so that they would have a verifiable and trustworthy copy of the transaction so that they could look at it any time in the next two years. Who's the skilled artist in here? The skilled artist in here, Your Honor, is someone skilled in the art of whatever the travel agents do as well as skilled in the art of the computer technology that they use. And that's supported by this court's precedent of, for example, Dye Star from last year, where this court said that the level of skill in the art for a dyeing process is not just somebody with a high school degree that dips fabric in a dye and then sets it out to dry, but it's someone with the advanced degrees necessary to invent a new dye. And this court said the same thing with this court's predecessor. The CCPA said the same thing decades earlier in In Re Grau, where the invention was a fastener for a beehive, and the court said that the level of skill in the art is that of someone skilled in the fastener art, not just a beekeeper. So the level of skill in this ARC, following those same cases, is not just a travel agent, it's not just someone working for ARC, but it's someone skilled in the art that the travel agents employ as well as the technology they use. Here, there's no dispute that these travel agents used computers for years. That's how they generated their tickets. The question is whether, in 2001, the Patent Office should issue a patent for saving a computer-generated form on a computer. If there are no further questions, I will be opening the hearing. Thank you, Mr. Kelly. Mr. Secozio. Your Honors, the question of being skilled in the art is rhetoric. There's been no showing, specifically, of what somebody is skilled in the art in this particular field. It just says, well, it might be this or it might be that. There's been no showing of what the person skilled in the art does or does not do. Now, again, we have to be very careful with semantics, because it's a question of, once the coupon is printed, yes, there is information. But before it gets printed, there is not that information. It can only exist once it gets printed. Mr. Burroughs' invention avoids the printing of that, and he taps into the computer. He doesn't tap into the printer. So at that particular time, the coupon data does not exist, and it must be created. And that's why, in the specification, it says created, and if you look at the drawings, you will see that the coupon data is extracted from the computer, not from the printer. Because once it gets printed, certainly, then you have something different. But again, where's the prior art? I mean, doesn't it have to be some prior art to show that this is the prior art? In Graham, they showed prior art. They used his own prior art. Where is the prior art in this case? A scanner? A fax machine? Absolutely not. I mean, we're entitled to the court's law in Ray Fine and the court's law in Graham. It's a United States Supreme Court decision. How can the patent office just ignore this with impunity? How could the patent office just operate on its own whim and caprice? Aren't we then back to where we were years and years ago, where we become a nation of men and not laws? Can the patent office just automatically dispense with the requirements of the law? It's not fair. It's not just. Mr. Burroughs is entitled to the law and the law of this court. I have never argued a case of obvious before this court before. I've been practicing patent law for 30 years. Your Honor, this is invention. The problem with the patent office, the problem with Mr. Kelly, and perhaps this court, is that they don't really understand the invention. And that's why Mr. Burroughs' declaration is so critical. Mr. Cozio, I think Mr. Kelly started out by saying the invention defines the terms very broadly to encompass far more than just pulling data out of a stream. That's not true, Your Honor, because it says the preamble said that it was a basis. I don't think it helps for you to say the patent office isn't following the law. I think the patent office is making every effort to follow the law. And, of course, this court will ultimately make a judgment as to whether they did so in this case. I'm sorry, sir. Is there a question? Well, I'm trying to figure out your argument, frankly. You've told us that there's something inventive in pulling data out of a stream. I find that incredible in 2007 to think there's something inventive about pulling data out of a stream. That may have been inventive in 1960, but today... Why do you say that, Your Honor? Well, I say that because I have a modicum of computer technological skill myself, and I think I could do this. But do you know of any prior art or of any system that you could use? I think it is within the knowledge of one of skill in the art. But first they have to conceive of the fact that this is what we need to do. They were told what to do. They were told to save this data by art. Optically. And the only way you can save it optically is print the coupon. Why do you say that? I can save data in... I can save it on floppy disks. I can save it on hard disks. I can save it in CDs. Sure. It just depends upon which key I press on my computer. No, sir. Not optically. The only way you can do it optically is by scanning it after it has been produced. It's the only way you can do it. Or putting it on a microfiche. Maybe I don't understand something here, but it seems very... As I've read the patent, it seemed very broad in telling me any way I save this is fine. It's not, because it has to be created from the reservation system. That's very narrow. But the data is all there. It's all right there. And all I have to do is know that I have to take that data and save it. What am I missing here? It's not there as a single entity. The only reason the court is saying that is because... Of course it's not there as a single entity. It's there on the ticket voucher. Art couldn't do it. None of the other agents could do it. It hasn't been done in five years. The only one who's done it is Mr. Burroughs. That's one of the criteria for obviousness. Your Honor, seriously, I think... There's no one who could save this data? It's... It's with regard to the reservation system. You have to look at the reservation system. And that's what the invention is related to. And there is no other prior art, even with regard to generating specific data, from a system. Well, we'll certainly take a close look at the record again, Mr. Seccosio. This is truly invention. Thank you very much.